UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **OBM, INC.**<br>1 N. Haven Street, Suite 3<br>Baltimore, MD 21224<br><br>**DANIEL LAWRENCE**<br>4329 Shore Rd.<br>Sparrows Point, MD 21219<br><br>Plaintiff<br><br>v.<br><br>**MADISON CAMPBELL**<br>344 Colony Ridge Drive<br>Delaware, Ohio 43015<br><br>Defendant. | CASE NO. _____<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiffs, Daniel Lawrence ("Mr. Lawrence") and OBM, Inc. ("OBM") file this Complaint for injunctive relief and damages against defendant Madison Campbell ("Ms. Campbell" or "Defendant"). Mr. Lawrence and OBM will collectively be referred to as the "Plaintiffs." Plaintiffs and Ms. Campbell will be referred to collectively as the "Parties."

## INTRODUCTION

Ms. Campbell—Mr. Lawrence's former girlfriend and lover—has knowingly and with a reckless disregard for the truth made false allegations against Mr. Lawrence, the CEO and co-founder of OBM, Inc., with respect to the nature of their consensual intimate relationship. Ms. Campbell's false allegations, which are defamatory *per se*, were made for the sole purpose of

1

extracting a significant financial buyout from Mr. Lawrence and OBM, and have caused Mr. Lawrence extreme emotional distress.

## PARTIES, JURISDICTION, AND VENUE

1. Mr. Lawrence is a long-term resident of Baltimore County, Maryland, who routinely conducts business in Maryland.

2. OBM is a Delaware corporation with a principal place of business located at 1 N. Haven Street, Suite 3, Baltimore, Maryland 21224.

3. Ms. Campbell is a long-term resident of the state of Ohio, who is employed by OBM. Ms. Campbell routinely conducts business in the State of Maryland. Further, Ms. Campbell has made false, malicious and defamatory allegations directed to individuals located in Maryland.

4. Plaintiff invokes the jurisdiction of this Court pursuant to 28 U.S.C. § 1332, as there is complete diversity of citizenship between the Parties, i.e., Mr. Lawrence is a citizen of Maryland, OBM is a Delaware corporation, and the Defendant is a citizen of Ohio, and the amount in controversy greatly exceeds the sum of $75,000, exclusive of interest and costs.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this Complaint occurred within this District. Further, Maryland has the most significant relationship to the Parties and the attendant harm arising out of Defendant's defamatory statements.

## FACTUAL BACKGROUND

6. Mr. Lawrence is a co-founder of OBM, a Baltimore-based software company that was created to provide cryptocurrency miners with the tools they need to operate efficiently. OBM has evolved to become an expert in power management, network infrastructure, and data analysis, services which will be referred to below as the "Industry."

7. In early 2024, Mr. Lawrence met Ms. Campbell at an Industry conference.

8. From the beginning of their relationship, Ms. Campbell was flirtatious and sexually aggressive in her interactions with Mr. Lawrence. By way of example, in May, 2024, Ms. Campbell sent Mr. Lawrence nude photos of herself. These photos were provided to Mr. Lawrence without his requesting them.

9. In June, 2024, Ms. Campbell and Mr. Lawrence began a consensual romantic relationship that included frequent sexual encounters that were often adventurous in nature. Ms. Campbell also continued to send Mr. Lawrence unsolicited sexually explicit photographs that Ms. Campbell had taken of herself.

10. In July, 2024, Ms. Campbell began working for OBM. The Parties' romantic relationship continued uninterrupted during the beginning of their employment-related relationship. Further, their intimate relationship also continued, with Ms. Campbell becoming increasingly more sexually adventurous and aggressive.

11. On or about August 10, 2024, Ms. Campbell invited Mr. Lawrence to her home, where they went to her bedroom and began to engage in consensual sexual intercourse. Ms. Campbell was an aggressively active participant during this sexual encounter (which took place on her bed), and she was alert throughout this initial encounter. The Parties then moved from Ms. Campbell's bed to the floor of her bedroom, and began to intimately re-engage. After several minutes, Ms. Campbell appeared to be disoriented. Concerned for her well-being, Mr. Lawrence immediately stopped the intimate encounter and helped Ms. Campbell back into bed. She then appeared to recover, resumed kissing and talking with him, no longer appeared disoriented, and they eventually fell asleep together.

12. The morning after the aforementioned event, i.e., August 11, 2024, Mr. Lawrence inquired whether Ms. Campbell was feeling better. Ms. Campbell stated that she was feeling fine, but claimed a lack of recollection about the events of the preceding evening. Mr. Lawrence informed her of her episode of disorientation, after which she then proceeded to carry on throughout the day as if nothing had happened.

13. Later on August 11, 2024, Ms. Campbell presented to Mr. Lawrence a list of townhomes for him to rent in Ohio, encouraging him to move closer so that they could spend more time together. Before the day was through, Ms. Campbell sent Mr. Lawrence a nude photograph of herself, again without any encouragement on the part of Mr. Lawrence.

14. On August 15, 2024, Ms. Campbell continued her efforts to find Mr. Lawrence a townhome in Ohio, and even paid for the application fee out of her own funds in an attempt to persuade Mr. Lawrence to relocate to Ohio.

15. From August 17, 2024 through August 19, 2024, Mr. Lawrence and Ms. Campbell stayed together at the Ritz Carlton in Dallas (the "Dallas Trip I"). They attended a concert together, and Ms. Campbell took Mr. Lawrence to show him the neighborhood where she was raised.

16. During the Dallas Trip I, Ms. Campbell wanted to introduce Mr. Lawrence to members of her extended family, and they had dinner with Ms. Campbell's aunt and uncle on August 18, 2024.

17. During the Dallas Trip I, Ms. Campbell continued to engage in romantic and sexual activity with Mr. Lawrence. Ms. Campbell and Mr. Lawrence got a couple's massage, Ms. Campbell texted Mr. Lawrence romantic messages, such as, "I love you so much. You are so special to me," and Ms. Campbell eagerly engaged with Mr. Lawrence in sexual activity in various

4

locations within the hotel. At the end of the trip, Ms. Campbell left a romantic letter in Mr. Larence's luggage to find when he got home which stated, "I love you so much."

18.     Between September 8-11, 2024, Ms. Campbell and Mr. Lawrence again travelled to Dallas, Texas (the "Dallas Trip II") for an Industry-related event. During the Dallas Trip II, Ms. Campbell and Mr. Lawrence engaged in numerous sexual encounters, one of which took place in a hotel conference room and which Ms. Campbell voluntarily recorded on her own personal cell phone. Immediately prior to her recording herself having sex with Mr. Lawrence, Ms. Campbell skipped around the aforementioned hotel conference room, laughing and licking the window of a vehicle upon which Ms. Campbell and Mr. Lawrence subsequently had consensual sexual intercourse.

19.     The romantic and intimate relationship between Ms. Campbell and Mr. Lawrence ended in late September, 2024.

20.     To Mr. Lawrence's shock and dismay, shortly after the end of the Parties' romantic relationship, Ms. Campbell proceeded to falsely and without any evidence accuse Mr. Lawrence of drugging her on the evening of August 10, 2024, and then having sex with her without her consent (the "Sexual Assault Allegation").

21.     Notwithstanding the end of their romantic relationship, in October, 2024, Ms. Campbell informed Mr. Lawrence that she frequently watches the sex tape she made of their hotel conference room encounter and masturbates as she does so. This information was shared voluntarily by Ms. Campbell and was not solicited by Mr. Lawrence.

22.     The Sexual Assault Allegation is completely false, which Ms. Campbell knows, and was made with malice, knowledge of its falsity and a reckless disregard for the truth.

23. Ms. Campbell proceeded to publicize the false Sexual Assault Allegation to multiple individuals. One of those individuals was Ms. Campbell's mother, Ms. Shana Medrano, who, on December 22, 2024, sent an unsolicited electronic message to Mr. Lawrence advising him that Ms. Campbell had told her of the false Sexual Assault Allegation. In her unsolicited electronic message, Ms. Campbell's mother asserted, "I don't believe any of it." Ms. Campbell's mother added in her text message that Ms. Campbell is not the victim, but, instead, "[s]he is a cold, calculated and manipulative liar." Ms. Campbell's mother encouraged Mr. Lawrence to "[s]tart digging up people from her past. If they are not currently in her life, they have similar stories."

24. Further, these disclosures appear to have been calculated to have maximum impact on Mr. Lawrence's reputation in the Industry and his livelihood. At least one of the individuals to whom Ms. Campbell disclosed the Sexual Assault Allegations is a well-connected Industry lobbyist.

25. In addition to the false Sexual Assault Allegation, and based upon information and belief, Ms. Campbell has informed multiple individuals in the Industry, at least one of whom resides in Baltimore, Maryland (Ms. Ashley Lipa), that she was traumatized by the alleged sexual assault, despite the fact that her subsequent actions, including her post-August 11, 2024 attempts to secure a townhome for Mr. Lawrence in Ohio, her continuous post-August 11, 2024 sexual overtures to and activities with Mr. Lawrence, her post-August 11, 2024 recording of a sexual encounter with Mr. Lawrence in a semi-public place, and her post-August 11, 2024 account of her masturbating to that recording, all suggest anything but trauma.

26. Although Ms. Campbell's mother's above-referenced outreach to Mr. Lawrence helped put Ms. Campbell's malicious lies into context, the pervasiveness of her outrageously

destructive behavior does not undo the reputational harm to Mr. Lawrence or soften the profound emotional distress arising out of Ms. Campbell's scorched-earth falsehoods.

27. On Friday, December 27, 2024, Ms. Campbell had a lengthy remote conversation with Mr. Lawrence in which she told him that she would be willing to sign a statement that the Sexual Assault Allegation never happened, and that the only reason she was pursuing a claim against Mr. Lawrence and OBM was because her attorneys were pressuring her against her will to do so. This shocking admission against interest on the part of Ms. Campbell was offered without any encouragement or prodding by Mr. Lawrence.

28. Notwithstanding her concession that the Sexual Assault Allegation was false, Ms. Campbell subsequently returned to publicizing her false and defamatory allegations against Mr. Lawrence.

29. During their dating relationship, Ms. Campbell confided to Mr. Lawrence that she is in a financially vulnerable position, marked by unsustainable personal debt and years of failure to pay her annual taxes.

30. Ms. Campbell's malicious, false allegations against Mr. Lawrence have been made for the sole purpose of extracting substantial monetary funds from Mr. Lawrence and his company, with the expectation that Mr. Lawrence would pay her off rather than bear the stress and embarrassment of defending himself in a public court proceeding against her outrageously false Sexual Assault Allegation.

31. The harm being suffered by Mr. Lawrence as a result of Ms. Campbell's malicious behavior is extraordinary and is ongoing.

## COUNT I
## DEFAMATION (On Behalf of All Parties)

32. Plaintiffs hereby incorporate all allegations set forth above as though fully alleged herein.

33. Ms. Campbell knowingly and recklessly published false statements about Mr. Lawrence, including, *inter alia*, the false Sexual Assault Allegation and the false allegation that this fictitious occurrence was causing her emotional harm.

34. The Sexual Assault Allegation is false. Mr. Lawrence never drugged Ms. Campbell and he never engaged in sexual activity with her when she was incapacitated and/or without her consent.

35. Ms. Campbell made the defamatory statements with actual malice, i.e., with knowledge of their falsity, or, alternatively, with a reckless disregard for their falsity.

36. In the alternative, Ms. Campbell made the aforementioned false and defamatory Sexual Assault Allegation against Mr. Lawrence negligently.

37. Ms. Campbell's false statements about the Sexual Assault Allegation and the purported emotional trauma resulting from the false Sexual Assault Allegation conveyed a defamatory meaning, i.e., it lowered the reputation of Mr. Lawrence in his profession, trade and/or business.

38. Ms. Campbell's false statements about the Sexual Assault Allegation and the purported emotional trauma resulting from the false Sexual Assault Allegation has caused, and continues to cause, significant emotional distress to Mr. Lawrence.

39. As a result of the publication of false and defamatory statements, Plaintiffs have suffered significant reputational and other damages in an amount in excess of $75,000, the exact amount of which will be determined at trial.

40. In making the defamatory statements, Ms. Campbell acted intentionally, maliciously, willfully and with the intent to injure Plaintiffs and to benefit herself financially. Accordingly, Defendant is liable to Plaintiffs for punitive damages in an amount to be determined at trial.

WHEREFORE, Plaintiffs demand no less than One Hundred Thousand Dollars ($100,000.00) in compensatory damages and no less than Three Hundred Thousand Dollars ($300,000.00) in punitive damages, plus interest and costs; and such other and further relief as the Court may deem just and proper.

## COUNT II
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (On Behalf of Mr. Lawrence)

41. Mr. Lawrence hereby incorporates all allegations set forth above as though fully alleged herein.

42. Accusations of sexual assault for the purpose of financial blackmail are as serious as one can imagine. Ms. Campbell's malicious and false Sexual Assault Allegation was intentional, reckless, and in deliberate disregard of a high degree of probability that her actions would cause Mr. Lawrence to suffer extreme emotional distress.

43. Ms. Campbell's malicious publication of the false Sexual Assault Allegation has at all times been willful and intentional.

44. Ms. Campbell's malicious and false Sexual Assault Allegation was extreme, willful, intentional, outrageous and beyond the bounds of decency in society.

45. Ms. Campbell's false Sexual Assault Allegation has caused Mr. Lawrence to suffer severe and extreme emotional distress.

WHEREFORE, Mr. Lawrence demands no less than One Hundred Thousand Dollars ($100,000.00) in compensatory damages and no less than Three Hundred Thousand Dollars ($300,000.00) in punitive damages, plus interest and costs; and such other and further relief as the Court may deem just and proper.

### DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: February 24, 2025

Respectfully submitted,

**OBM, INC. and
MR. DANIEL LAWRENCE**

By their attorneys,

Douglas W. Desmarais, Bar No. 5180
Kerstin M. Miller, Bar No. 29736
SMITH & DOWNEY, P.A.
320 E. Towsontown Blvd., Suite 1 East
Baltimore, MD 21286
(410) 321-9000 (phone)
(410) 321-6270 (fax)
ddesmarais@smithdowney.com
kmiller@smithdowney.com
*Counsel for Plaintiff*